IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BASIC RESEARCH, LLC, a Utah limited liability company,<br><br>             Plaintiff,<br><br>v.<br><br>WOODRICHEMTECH CO., LTC., a Korean limited liability company, and JOHN DOES - X,<br>             Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS SECOND AMENDED THIRD-PARTY COMPLAINT**<br><br><br>**Case No. 2:13-cv-00509-DN**<br><br>**District Judge David Nuffer** |
| WOODRICHEMTECH CO., LTC., a Korean limited liability company,<br><br>             Third-Party Plaintiff,<br><br>v.<br><br>KEVIN E. ANDERSON; ANDERSON, CALL & WILKINSON, P.C. a Utah professional corporation,<br>             Third-Party Defendants. | |

Third-Party Defendants Kevin E. Anderson ("Anderson") and Anderson, Call & Wilkinson, P.C. ("ACW") (collectively "Third-Party Defendants") move[1] to dismiss Third-Party Plaintiff WooriChemtech Co., Ltd.'s ("Woori") Second Amended Third-Party Complaint.[2] Third-Party Defendants argue that they are entitled to relief because (a) Woori's claims are barred by the statute of limitations; and (b) Woori's claims have been released pursuant to an

---

[1] Motion to Dismiss Second Amended Third-Party Complaint and Memorandum in Support ("Motion"), docket no. 94, filed November 12, 2014.

[2] Second Amended Third-Party Complaint, docket no. 84, filed October 15, 2014.

enforceable settlement agreement.[3] After carefully reviewing the parties' filings and relevant legal and statutory authorities, Third-Party Defendants' Motion is GRANTED for the reasons set forth below.

BACKGROUND ................................................................................................................ 2
MOTION TO DISMISS STANDARD.............................................................................. 5
DISCUSSION .................................................................................................................... 5
    A.    Woori's Claims Are Barred by the Statute Of Limitations.................................... 5
        1.    *The six-year statute of limitations does not apply to Woori's Breach of Contract claim* ........................................................................................ 6
        2.    *The six-year statute of limitations does not apply to Woori's Breach of Implied Covenant of Good Faith and Fair Dealings claim*..................... 10
        3.    *The Statute of Limitations for Woori's Causes of Action were not Tolled by the Discovery Rule* ................................................................................ 11
    B.    Woori's Claims Have Been Released Pursuant to an Enforceable Settlement Agreement ....................................................................................................... 15
ORDER ............................................................................................................................ 22

# BACKGROUND[4]

Sometime in December 2005, Woori and Basic Research, LLC ("Basic") entered into an international distribution agreement.[5] Eventually, certain disputes arose between Woori and Basic concerning their agreement.[6] The two companies engaged in a series of settlement negotiations between 2007 and 2008 regarding their disputes.[7] Heung Young Son, a longtime friend of Woori's president, represented that he would assist Woori in the negotiations with Basic.[8] On December 3, 2007, Woori's president executed a Power of Attorney authorizing Mr. Son to represent Woori in the settlement negotiations.[9] At Mr. Son's recommendation Woori

---

[3] Motion at 2.

[4] The following facts are taken from the Second Amended Third-Party Complaint.

[5] *Id.* ¶ 6.

[6] *Id.* ¶ 7.

[7] *Id.* ¶ 8.

[8] *Id.* ¶ 9.

[9] *Id.* ¶ 11.

retained Third-Party Defendants in February 2008 to represent it in the negotiations with Basic and also to assist Woori in negotiating a new distribution agreement with Basic.[10] A Retainer Agreement dated February 11, 2008 memorialized Woori's agreement with Third-Party Defendants.[11] Woori disclosed to Third-Party Defendants confidential, non-public and proprietary information related to Woori's business, business strategy, and contractual and economic relations.[12] Woori also informed Third-Party Defendants that it was trying to enter into a new distribution agreement with Basic.[13]

Woori and Basic were able to settle their disputes and on or about December 5, 2008, they executed a Settlement Agreement, in which Basic issued a product credit to Woori in the amount of approximately $740,000 ("2008 Settlement Agreement").[14] Woori ordered products from Basic using approximately $516,000 of its credit, leaving roughly $224,000 in remaining credit.[15] Through 2009, Third-Party Defendants continued to represent Woori while it was attempting to enter into a new distribution agreement with Basic.[16] In early 2009, without any notice to Woori, and contrary to the interests of Woori, Third-Party Defendants began representing Mr. Son and EPC America, Inc., EPC Korea, Inc., and/or EPC Technologies, Inc. (collectively, "EPC") in negotiating a separate distribution agreement with Basic.[17] Unbeknownst to Woori, EPC and Basic entered into a distribution agreement in March 2009, in which, Basic purported to assign to EPC all of Woori's interest under the Settlement Agreement,

---

[10] *Id.* ¶ 12.

[11] *Id.* ¶ 13; s*ee also* Retainer Agreement, docket no. 115-1, filed October 15, 2015.

[12] *Id.* ¶ 16.

[13] *Id.* ¶ 17.

[14] *Id.* ¶ 18.

[15] *Id.* ¶ 19.

[16] *Id.* ¶ 20.

[17] *Id.* ¶ 22.

3

including the remaining product credit of $224,000.[18] Woori alleges that EPC ordered products from Basic in March 2009 using Woori's remaining product credit.[19]

Sometime around April 13, 2009, Anderson sent Evan Strassberg of Basic a copy of the power of attorney that Woori had provided to Anderson, and falsely represented that Woori had assigned its rights under the Settlement Agreement to EPC.[20] This was done without Woori's consent or knowledge.[21] Moreover, Woori had never assigned its rights under the Settlement Agreement to EPC, and the power of attorney did not authorize EPC to make that assignment.[22]

In December 2009, Woori attempted to order additional products from Basic using its remaining $224,000 credit.[23] Woori was told that all of Woori's rights under the Settlement Agreement, including the remaining product credit, had been assigned to EPC and that no credit remained for Woori to use.[24] It was not until January of 2011, however, that Woori had any reason to believe that Third-Party Defendants were involved in the purported wrongful transfer of Woori's product credit to EPC.[25] Woori became aware of Anderson's involvement when Basic, on January 4, 2011, emailed Woori copies of two emails sent by Anderson to Basic in April of 2009. Those emails contained a copy of the power of attorney and falsely represented that Woori had assigned its rights under the Settlement Agreement to EPC.[26] That was the first time that Woori had seen those emails and the first it had any reason to believe that Third-Party

---

[18] *Id.* ¶ 24.

[19] *Id.* ¶ 25.

[20] *Id.* ¶ 27.

[21] *Id.* ¶ 28.

[22] *Id.* ¶ 29.

[23] *Id.* ¶ 31.

[24] *Id.* ¶ 32.

[25] *Id.* ¶ 33.

[26] *Id.* ¶ 34.

Defendants had sent the power of attorney to Basic, had falsely represented that Woori had assigned its rights under the Settlement Agreement to EPC, or had otherwise breached their duties and obligations to Woori and no longer were acting in Woori's best interest.[27]

## MOTION TO DISMISS STANDARD

To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face.'"[28] To state a plausible claim, "the Plaintiff has the burden to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."[29] "Factual allegations must be enough to raise a right to relief above the speculative level."[30] And although all well-pleaded facts in the complaint are presumed true, conclusory allegations will not be considered.[31] Conclusory allegations are allegations that "do not allege the factual basis" for the claim.[32] The court is not bound by a complaint's legal conclusions couched as facts.[33]

## DISCUSSION

### A.  Woori's Claims Are Barred by the Statute Of Limitations

Third-Party Defendants move to dismiss all six of Woori's causes of action based on the statute of limitations. Woori, in its Second Amended Third-Party Complaint, asserts the following causes of action: (1) Breach of Fiduciary Duty; (2) Negligence/Legal Malpractice; (3) Breach of Contract; (4) Breach of Implied Covenant of Good Faith and Fair Dealing;

---

[27] *Id.* ¶ 35.

[28] *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[29] *VanZandt v. Oklahoma Dept. of Human Services,* 276 F. App'x 843, 846 (10th Cir. 2008) (quoting *Robbins,* 519 F.3d at 1247.)

[30] *Twombly,* 550 U.S. at 555.

[31] *See Tal v. Hogan,* 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied,* 549 U.S. 1209 (2007).

[32] *Brown v. Zavaras,* 63 F.3d 967, 972 (10th Cir. 1995).

[33] *See Twombly,* 550 U.S. at 555.

(5) Interference with Existing Economic Relations; and (6) Interference with Prospective Economic Relations.

Third-Party Defendants contend that all of Woori's claims are barred by the four-year statute of limitations and that the equitable discovery rule does not apply to toll the statute of limitations. Woori argues that the six year statute of limitation applies to its breach of contract and breach of the implied covenant of good faith and fair dealings claims, and that the rest of its claims fall under the equitable discovery tolling exception, making them timely under the applicable four year statute of limitations.

1. *The six-year statute of limitations does not apply to Woori's Breach of Contract claim*

Third-Party Defendants contend the six-year statute of limitations for written contracts should not apply to Woori's Breach of Contract cause of action. According to Third-Party Defendants, this cause of action is more appropriately characterized as a legal malpractice grounded in tort and therefore, "should be barred under the four-year statute of limitations for legal malpractice claims."[34] Third-Party Defendants argue that in order for liability to be founded upon a written instrument, "[t]he liability must arise out of the written instrument 'not remotely or ultimately, but immediately.'"[35] Third-Party Defendants point out that the facts supporting Woori's Breach of Contract cause of action revolve around a written Retainer Agreement, "which provides that Mr. Anderson would 'assist [Woori] in protecting its interests and defending its legal rights concerning a distribution agreement and disputes over product quality, functionality and chemistry, and related issues and the potential arbitration of disputes.'"[36] They argue that the "plain language of the Retainer Agreement limits the obligations of [Third-Party

---

[34] Motion at 10.

[35] *Id.* (quoting *Bracklein v. Realty Ins. Co.*, 80 P.2d 471, 476 (Utah 1938)).

[36] *Id.* at 11.

Defendants] to the original dispute with Basic, which was resolved when Basic and Woori entered the 2008 Settlement [Agreement]."[37] Third-Party Defendants explain that "[b]y contrast, this lawsuit arises from events that allegedly occurred after the 2008 Settlement [Agreement] and which are based on promises made outside of the Retainer Agreement, such as Woori's claim that [Third-Party Defendants] were retained to negotiate a new distribution agreement."[38] Third-Party Defendants conclude that "[t]hese allegations are only indirectly connected to the Retainer Agreement and therefore . . . not subject to the six-year statute of limitations."[39]

Woori, in opposition, contends that "[a] comparison between the language of the Retainer Agreement and the allegations in [Woori's] Complaint," shows that its Breach of Contract claim is directly connected to the Retainer Agreement.[40] Woori asserts that "Anderson promised in the Retainer Agreement that he would, among other things, 'assist [Woori] in protecting its interests.' Paramount in protecting [Woori's] interests is not representing another party in a manner contrary to those interests."[41] Woori argues that Anderson has breached his promise in the Retainer Agreement to "assist [Woori] in protecting its interests[,]" by (1) representing EPC in negotiating a distribution agreement with Basic while also representing Woori in negotiating a distribution agreement with Basic and (2) sending to Basic a copy of the power of attorney that Woori provided to Anderson in confidence and falsely representing to Basic that Woori had assigned its rights under its settlement agreement with Basic to EPC.[42]

---

[37] *Id.*

[38] *Id*.

[39] *Id*.

[40] WooriChemtech CO., Ltd.'s Opposition to Kevin E. Anderson and Anderson, Call & Wilkinson, P.C.'s Motion to Dismiss Second Amended Third-Party Complaint at 15 ("Opposition"), docket no. 96, filed December 15, 2014.

[41] *Id.* at 16.

[42] *Id.*

In their reply, Third-Party Defendants reiterate that the language at issue in the Retainer Agreement—that Third-Party Defendants will "assist [Woori] in protecting its interests"—must be viewed in context.[43] Third-Party Defendants point out that the Retainer Agreement states that "Anderson would 'assist [Woori] in protecting its interests and defending its legal rights concerning a distribution agreement[.]'"[44] Therefore, "[t]he language cited refers to specific litigation with Basic, which was resolved when Basic and Woori entered a settlement agreement in 2008."[45] Third-Party Defendants again stress that the claims in the present lawsuit are only indirectly connected to the Retainer Agreement because they arise from subsequent events when Defendants were allegedly asked to negotiate a new distribution agreement.[46]

*Bracklein v. Realty Insurance Co.*[47] sets forth the test to determine whether the six-year statute of limitations applies. *Bracklein* states that "if the fact of liability arises or is assumed or imposed from the instrument itself, or its recitals, the liability is founded upon an instrument in writing."[48] "[A] cause of action is founded upon an instrument of writing when the contract, obligation, or liability grows out of written instruments, not remotely or ultimately, but immediately."[49] The obligation or "promise must arise directly from the writing itself and be included in its terms."[50] *Bracklein* clarified, however, that "a cause of action is not founded on a written instrument merely because it is indirectly connected with the instrument. And the fact

---

[43] Reply Memorandum in Support of Motion to Dismiss Second Amended Third-Party Complaint at 7 ("Reply"), docket no. 105, filed January 16, 2015.

[44] Second Amended Third-Party Complaint ¶ 14.

[45] Reply at 7.

[46] *Id.*

[47] 80 P.2d 471 (Utah 1938).

[48] *Id.* at 476.

[49] *Id.* (internal quotation marks and citation omitted).

[50] *Id.*

that a writing may be a link in the chain of evidence establishing the liability is not sufficient to say the cause of action is founded on such writing . . . ."[51]

The only writing relied upon by Woori in the pleadings for its Breach of Contract cause of action is the Retainer Agreement. The relevant language in the Retainer Agreement reads:

> This letter will confirm that Woorichemtech Company ("Client") has requested that Kevin E. Anderson P.C. of the Anderson Call Law Firm ("Legal Counsel") assist Client in protecting its interests and defending its legal rights concerning a distribution agreement and disputes over product quality, functionality and chemistry, and related issues and the potential arbitration of disputes.[52]

Woori relies on the language that states that Anderson will "assist [Woori] in protecting its interests and defending its legal rights concerning a distribution agreement and disputes over product quality, functionality and chemistry, and related issues and the potential arbitration of disputes."[53] Woori argues that, based on the quoted language above, Third-Party Defendants breached the Retainer Agreement by: (1) concurrently representing both EPC and Woori in negotiating a new distribution agreement with Basic; and (2) sending Basic a copy of the power of attorney (that Woori had provided to Anderson) and falsely representing that under the power of attorney Woori had assigned its settlement agreement rights with Basic to EPC.

The quoted language of the Retainer Agreement is not sufficiently connected with Woori's breach of contract cause of action for the six-year statute of limitations to apply. As alleged in the Second Amended Complaint, after Woori and Basic entered into a distribution agreement in December 2005, the parties began having disputes concerning the 2005 distribution agreement. Due to these disputes, the parties engaged in a series of settlement negotiations between 2007 and 2008.

---

[51] *Id.*

[52] Retainer Agreement at 1.

[53] *Id.*

As Third-Party Defendants correctly point out, the quoted language of the Retainer Agreement limits the obligations of Third-Party Defendants to represent Woori as it engaged in the settlement negotiations with Basic concerning certain disputes that had arisen from their 2005 distribution agreement. Third-Party Defendants fulfilled this obligation on or about December 5, 2008, when Woori and Basic executed a Settlement Agreement.  Although Woori alleges that Third-Party Defendants were retained to also "assist Woori in negotiating a new distribution agreement with Basic," this alleged obligation appears nowhere in the Retainer Agreement.

It is possible that Third-Party Defendants engaged in legal malpractice based on their alleged representation of EPC in a matter that seems to be adverse to Woori's interests and also their alleged acts of emailing the power of attorney to Basic and falsely representing that Woori had assigned its rights under its settlement agreement. But the alleged actions of Third-Party Defendants are not "immediately" based on a written instrument such as the Retainer Agreement in question. Stated differently, Third-Party Defendants' possible liability for the above alleged actions arises from the relationship of the parties established by the Retainer Agreement, but not directly from any specific language in the Retainer Agreement. Therefore, Third-Party Defendants potential liability stems "remotely or ultimately" from the Retainer Agreement. Woori's breach of contract claim is really an action sounding in tort, and the four-year statute of limitations applies.

2. *The six-year statute of limitations does not apply to Woori's Breach of Implied Covenant of Good Faith and Fair Dealings claim*

Every contract includes a covenant of good faith and fair dealing.[54] "As the duties of good faith and fair dealing arise out of the relationship between the parties created by the

---

[54] B*rown v. Moore*, 973 P.2d 950, 954 (Utah 1998).

contract and have no independent existence outside of the contract, a claim for the breach of the covenant of good faith arises under the contract."[55] And when the implied covenant is founded upon a written contract, breach of the implied covenant is governed by the six-year statute of limitations, similar to a breach of contract claim.[56] Having found that Woori's Breach of Contract claim is really an action sounding in tort, it naturally follows that the dependent claim of breach of the implied covenant of good faith and fair dealing also fails as it has no independent existence outside of a contract.

   3.   *The Statute of Limitations for Woori's Causes of Action were not Tolled by the Discovery Rule*

   Woori argues that the equitable discovery rule applies in this case to toll the statute of limitations on its claims.[57] Citing *Russell Packard Dev. v. Carson,*[58] Woori states that "[t]he equitable discovery rule applies to toll the statute of limitations '(1) where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct, and (2) where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.'"[59] Woori asserts "[b]oth the 'concealment' and the 'exceptional circumstances' versions of the equitable discovery rule apply to this case."[60]

   Woori is correct that there are two circumstances in which the equitable discovery rule prevents a statute of limitations from beginning to run upon the happening of the last event. "However, 'before a statute of limitations may be tolled under [the equitable discovery rule], the

---

[55] *Peterson & Simpson v. IHC Health Servs., Inc.*, 217 P.3d 716, 722 (Utah 2009).

[56] *CIG Exploration, Inc. v. State*, 24 P.3d 966, 971 (Utah 2001).

[57] Opposition at 17.

[58] 108 P.3d 741 (Utah 2005).

[59] Opposition at 17–18 (citing *Russell*, 108 P.3d at 747).

[60] *Id.* at 18.

plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitation period.'"[61] Woori has not satisfied this threshold showing.

The four-year statute of limitations on Woori's claims began to run when Woori's causes of action accrued. Woori does not dispute Third-Party Defendants' assertion that "the last event necessary to complete the cause of action for [Woori's] claims may have been completed in March 2009."[62] Because Woori's causes of action accrued in March 2009, the four-year statute of limitations expired in March 2013.

Woori contends, however, that it "did not discover the facts constituting those claims until January 2011 . . . when counsel from Basic forwarded e-mails sent by Anderson to Basic containing the Power of Attorney and representing that the Power of Attorney meant that [Woori] has assigned its rights under the Settlement Agreement to EPC."[63] Even assuming Woori did not discover its possible causes of action until January 2011, Woori nevertheless became aware of its injuries or damages and possible causes of action almost two years before the statute of limitations expired. "[T]he discovery rule does not apply to a plaintiff who becomes aware of his injuries or damages and a possible cause of action before the statute of limitations expires."[64]

Woori argues that even if it knew or reasonably should have known the facts underlying its cause of action, the concealment exception of the equitable discovery rule may still apply.[65]

---

[61] *Helfrich v. Adams*, 299 P.3d 2, *6 (Utah Ct. App. 2013) (B*erneau v. Martino,* 223 P.3d 1128 (Utah 2009)).

[62] Opposition at 18.

[63] *Id.*

[64] *Atwood v. Sturm, Ruger & Co.*, 823 P.2d 1064, 1065 (Utah 1992) (citing B*righam Young University v. Paulsen Construction Co.,* 744 P.2d 1370 (Utah 1987)).

[65] Opposition at 19.

Woori cites to *Russell*, where the court held that "if a plaintiff either knew or reasonably should have known of the facts underlying his or her cause of action *before* a limitations period expired, the plaintiff may nevertheless invoke the concealment version of the discovery rule."[66] *Russell* went on to clarify that in order "for the rule to excuse a plaintiff's failure to file within the fixed limitations period in these circumstances, a plaintiff must show that, *given the defendant's actions*, the plaintiff acted reasonably in failing to file suit before the limitations period expired."[67]

Woori contends that it "acted reasonably in not filing the present suit against Defendants before the expiration of the statute of limitations."[68] Woori asserts that

> [a]fter it discovered Defendants' misconduct, [it] filed a cross-complaint against them in the California state court which was then overseeing a related dispute between [Woori], EPC, and Basic. Defendants moved to dismiss [Woori]s cross-complaint on the grounds of lack of personal jurisdiction, and by the time the California court granted the motion and dismissed [Woori's] cross-complaint in August 2013, the statute of limitations on [Woori's] claims had already passed.[69]

According to Woori, it was reasonable that it did not file suit against Third-Party Defendants until after its cross-complaint had been dismissed by the California court "because it believed that the California court was the best forum for adjudicating the interrelated claims between [Woori], EPC, Basic, and [Third-Party] Defendants."[70]

Woori's "reasonableness" argument is based on an incorrect interpretation of the rationale behind *Russell's* holding that the concealment exception might still apply even if plaintiff knew or reasonably should have known of the facts underlying its cause of action before

---

[66] *Russell*, 108 P.3d at 748.

[67] *Id.* (emphasis added).

[68] Opposition at 19.

[69] *Id.*

[70] *Id.*

a limitation period expires. *Russell* explains that there should not be an "overly strict interpretation" of the concealment version of the discovery rule because of "the policy of 'not allowing a defendant who has concealed his wrongdoing to profit from his concealment[.]"[71] "If we were to look only to whether a plaintiff theoretically *could* have brought a suit before the limitations period expired without looking to the relative reasonableness or unreasonableness of that action under the circumstances, we would reward a defendant's fraudulent and deceptive misbehavior by depriving an innocent plaintiff of a reasonable period within which to act."[72] For this reason, the Utah Supreme Court underscored that "for the rule to excuse a plaintiff's failure to file within the fixed limitation period [when plaintiff either knew or reasonably should have known], a plaintiff must show that, *given the defendant's actions*, the plaintiff acted reasonably in failing to file suit before the limitation period expired."[73]

The only reason that Woori provides for not filing suit before the limitation period expired is its reasonable belief that the California court was the best forum to adjudicate these claims. Woori fails to point to any actions by Third-Party Defendants that caused it not to file suit before the limitation period expired. As previously mentioned, Woori became aware of its causes of action at least 20 months before the statute of limitations expired. Under the circumstances, Woori has not demonstrated that it acted reasonably in not filing a complaint until after the limitation period expired. Therefore, the concealment version of the discovery rule does not operate to toll the statute of limitations.

Similar to the concealment exception discussed above, "before a court reaches [the exceptional circumstances] test, an initial showing must be made that the plaintiff did not know

---

[71] *Russell*, 108 P.3d at 748. (quoting *Berenda v. Langford*, 914 P.2d 45, 52 (Utah 1996)).

[72] *Id.*

[73] *Id.* (emphasis added).

of and could not reasonably have known of the existence of the cause of action in time to file a claim within the limitation period."[74] As mentioned above, it is undisputed that Woori became aware of its causes of action before the expiration of the limitation period. The threshold test for exceptional circumstances has not been met. The exceptional circumstances version of the discovery rule does not operate to toll the statute of limitations. Accordingly, all of Woori's claims in its Second Amended Third-Party Complaint are barred by the statute of limitations.

**B. Woori's Claims Have Been Released Pursuant to an Enforceable Settlement Agreement**

Third-Party Defendants argue that in addition to being barred by the statute of limitations, all of Woori's claims against Third-Party Defendants were released by a 2013 Settlement Agreement between Woori and EPC.[75] Woori argues that the 2013 Settlement Agreement "could not have applied to the claims filed in this action because they were not filed until seven months after the execution of the [2013 Settlement] Agreement."[76] Woori also contends that the plain language of the 2013 Settlement Agreement "merely required the dismissal of claims against Anderson (not ACW) pending at the time the [2013 Settlement] Agreement was signed."[77]

The relevant language of the 2013 Settlement Agreements reads:

1. WooriChem shall immediately withdraw any cross-complaints filed in US courts against EPC, EPC related companies and individuals (By removing lawsuits involving EPC, EPC America, Basic Research, Kevin Anderson, Heung Young Sohn, Gun Choon Lee and Jung Soo Lee) Exception, Kwangwon U S A and Kwongwon related persons shall not be part of this removal of cross-complaints

. . .

---

[74] *Macris v. Sculptured Software, Inc.*, 2001 UT 43, ¶ 18, 24 P.3d 984, 989 (W*arren,* 838 P.2d at 1129).

[75] Motion at 7–8.

[76] Opposition at 7–8.

[77] *Id.* at 9.

3. EPC and WooriChem shall not mutually file any civil/criminal lawsuits nor objections involving Strivectin once both parties enter into this Agreement.[78]

Whether the 2013 Settlement Agreement precludes Woori from bringing the claims found in its Second Amended Third-Party Complaint is similar to an issue brought in December 2013 before the California Superior Court of San Bernardino County ("California Superior Court") by Basic and Kwongwon USA, Inc. and related parties ("Kwongwon")—two of the third-party beneficiaries of the 2013 Settlement Agreement.[79] Basic and Kwongwon argued that the parties to the 2013 Settlement Agreement intended that Woori's claims against them would be dismissed with prejudice and Woori was prohibited from refiling its claims or any new claims.[80] Woori argued that the 2013 Settlement Agreement "was ambiguous regarding a critical term: dismissal of Woori's claims."[81] The California Superior Court concluded that EPC and Woori entered into an enforceable settlement agreement and that the dismissal was with prejudice.[82] On October 14, 2015, the California Court of Appeals affirmed the California Superior Court's Order enforcing the 2013 Settlement Agreement. The California Court of Appeals held:

> Here, after entering into the 2013 settlement agreement, the parties to the agreement disagreed on whether the agreement required dismissing Woori's claims with prejudice. Nevertheless, the 2013 settlement agreement as a whole is sufficiently clear and definite as to the material terms, including that Woori is required to dismiss its claims with prejudice. This can be reasonably inferred from language in the agreement requiring Woori to "withdraw" or dismiss its claims and *language prohibiting Woori from refiling its claims or refiling any new claims*. In effect, these terms are the equivalent of requiring dismissal with prejudice. Woori could not initially dismiss its claims without prejudice and then

---

[78] Agreement, Exhibit A of Motion, docket no. 94-1, filed November 12, 2014.

[79] *WooriChemtech Co. v. EPC Techs., Inc.*, No. E061174, 2015 WL 5968295, at *3–4 (Cal. Ct. App. Oct. 14, 2015) (unpublished).

[80] *Id.*

[81] *Id.* *4.

[82] *Id.*

later return to court and dismiss them with prejudice, after the court no longer has jurisdiction over the matter.

We therefore conclude that, even though, after executing the 2013 settlement agreement, the parties disagreed as to whether dismissal of Woori's claims must be with prejudice, the terms of the 2013 settlement agreement are sufficiently clear that Woori must dismiss its claims with prejudice.[83]

After the issuance of the California Court of Appeals Opinion, supplemental briefing was requested on the impact of that Opinion on the present case.[84] In its supplemental brief, Woori argues that "[t]he Opinion has no bearing on [Third-Party] Defendants' Motion to Dismiss because the Opinion does not address the claims brought by WooriChemtech in this action."[85] Woori raises several arguments in support of its position.

### Woori's Arguments

First, Woori contends that "neither the trial court, nor the Court of Appeals, determined that the 2013 Settlement Agreement precluded the claims that WooriChemtech has brought against the [Third-Party] Defendants in this Court."[86] According to Woori, Anderson and ACW were not parties to the California case at the time the California Superior Court granted the motion to enforce the 2013 Settlement Agreement.[87] Woori points out that "on July 1, 2013, Anderson and ACW moved to quash service of a summons WooriChemtech had served on them on the basis that the California court lacked personal jurisdiction over them. The court granted their motion on August 9, 2013."[88] And the motion to enforce the 2013 Settlement Agreement

---

[83] *Id.* * 5 (emphasis added).

[84] Docket text order, docket no. 117, filed December 2, 2015.

[85] WooriChemtech Co., Ltd.'s Supplemental Brief Re Kevin E. Anderson and Anderson, Call & Wilkinson, P.C.'s Motion to Dismiss Second Amended Third-Party Complaint at 2 ("Woori's Supplemental Brief"), docket no. 125, filed December 21, 2015.

[86] *Id.* at 3.

[87] *Id.*

[88] *Id.*

"was not granted until May 7, 2014, nearly 9 months after Anderson and ACW has [*sic*] been dismissed as defendants for lack of personal jurisdiction."[89] Based on the above time frame, Woori concludes that "[t]he Opinion does not address the claims against Anderson and ACW that had been dismissed months before the trial court ruled that the 2013 Settlement Agreement precluded the remaining claims before it."[90]

Next, Woori argues that "the Opinion did not address whether the claims brought in this case are within the scope of the 2013 Release Agreement's release."[91] Woori asserts:

> The 2013 Release Agreement provided that WooriChemtech was not to bring claims against the released parties "involving Strivectin." The opinion does not reach whether the claims WooriChemtech has brought against the Defendants in this case involve Strivectin. Those claims all arise from the Defendants' breaches of their common law and contractual obligations to WooriChemtech as its attorneys. WooriChemtech has alleged claims of breach of fiduciary duty, professional negligence/legal malpractice, breach of contract, breach of the implied covenant of good faith and fair dealing, and interference with existing and prospective economic relations. None of those claims "involve Stivectin." Rather they each arise from the [Third-Party] Defendants' decision to act against WooriChemtech's interests. . . . . Accordingly, the claims brought by WooriChemtech in this case do not "involve Strivectin" and were not released by the 2013 Release Agreement.[92]

Woori's final argument is that "the Opinion does not reach the question of whether the 2013 Release Agreement can be construed as releasing claims WooriChemtech has against ACW. Defendant ACW was not a party to the 2013 Release Agreement, and its only potential claim to rights under the Agreement would be as a third party beneficiary of the contract."[93] Woori contends that "[t]hird-parties only have enforceable rights under a contract when 'the intention of the contracting parties to confer a separate and distinct benefit upon the third party is

---

[89] *Id.*

[90] *Id.* at 4.

[91] *Id.*

[92] *Id.* at 4–5.

[93] *Id.* at 5.

clear.'"[94] Woori concludes that "[a]t minimum, there is a question of fact as to whether the parties to the Agreement, including WooriChemtech, intended that ACW would benefit from the terms of the Agreement."[95]

### Analysis of Woori's Arguments

Woori is correct that neither California Superior Court nor the California Court of Appeals considered whether the 2013 Settlement Agreement precluded the claims that WooriChemtech has brought against the Third-Party Defendants in the present case. Also, as Woori points out, the California Court of Appeals Opinion does not address whether the claims in this case are within the scope of the 2013 Settlement Agreement. However, the underlying rationale articulated by the California courts is applicable and dispositive here. A review of Woori's Second Amended Third-Party Complaint reveals that all of Woori's allegations relate to and involve Strivectin, and form the foundation of all of its claims. As aptly put by Third-Party Defendants:

> The genesis of the dispute arose from a 2005 distribution agreement in which Woori was permitted to distribute StriVectin skin-care products in Korea.[96] Following several disputes regarding the agreement, Woori retained [Third-Party] Defendants to "represent [Woori] in the negotiations with Basic relating to the dispute" and "to assist [Woori] in negotiating a new distributor agreement with Basic."[97] Both tasks were directly related to StriVectin.[98]
>
> Woori alleges that after engaging the services of Defendants, Defendants wrongfully terminated the relationship and proceeded to represent another party,

---

[94] *Id.* (quoting *BC Tech., Inc. v. Ensil Int'l Corp.*, No. 2:02-CV-700 TS, 2007 WL 2908282, at *3 (D. Utah Oct. 3, 2007)).

[95] *Id.*

[96] Supplemental Memorandum Supporting Motion to Dismiss Second Amended Third-Party Complaint at 4 ("Third-Party Defendant's Supplemental Memorandum"), docket no. 124, filed December 21, 2015 (citing *WooriChemtech Co. v. EPC Techs., Inc.*, 2015 WL 5968295).

[97] *Id.* (citing Second Amended Third-Party Complaint. at ¶¶ 6–7, 12).

[98] *Id.* (citing See Second Amended Third-Party Complaint at ¶ 14 (quoting language from the retainer agreement providing that Defendants would "assist [Woori] in protecting its interests and defending its legal rights concerning a distribution agreement and disputes over product quality, functionality and chemistry, and related issues")).

EPC, in negotiating a distribution agreement with Basic.[99] Woori further alleges that Defendants assisted EPC in wrongfully obtaining a portion of Woori's credit balance with Basic, which then allowed EPC to obtain StriVectin products from Basic.[100] Once again, each of these allegations is clearly related to StriVectin and form the foundation of Woori's causes of action.

Woori was fully aware of claims against Defendants as early as January 3, 2011.[101] In fact, Woori raised these claims in the California litigation on April 4, 2013—approximately a month before entering the Settlement Agreement.[102] This sequence of events illustrates that Woori's claims against Defendants were inextricable from the StriVectin dispute. Although Woori is now attempting to disguise these claims as legal malpractice, they are merely an attempt to relitigate an old dispute—one which was dismissed by the Settlement Agreement and twice upheld by California courts.[103]

Because Woori's claims relate to and involve Strivectin, the 2013 Settlement Agreement precludes Woori from bringing these claims against Anderson.

Woori argues that ACW was not one of the listed parties to the 2013 Settlement Agreement and therefor the release does not apply to ACW. It is undisputed that the 2013 Settlement Agreement does not list ACW as one of the parties whom Woori agreed to release from liability. Utah Code Ann. § 15-4-4 of the Joint Obligations Act resolves Woori's remaining argument relating to ACW's vicarious liability for the actions of Anderson.[104] Section 15-4-4 of the Joint Obligations Act provides that if an obligee (Woori) releases or discharges a joint or joint and several obligor and does not make a reservation of rights, the co-obligors shall be discharged to the extent provided in § 15-4-5.[105] Because ACW is a co-obligor,[106] and the 2013

---

[99] *Id.* (citing Second Amended Third-Party Complaint at ¶¶ 21–22).

[100] *Id.* (citing Second Amended Third-Party Complaint at ¶¶ 24–25).

[101] *Id.* (citing Second Amended Third-Party Complaint at ¶ 35).

[102] *Id.* (citing Opposition at 6).

[103] *Id.* at 4–5.

[104] *See Peterson v. Coca-Cola USA,* 48 P.3d 941, 949 (Utah 2002) (stating the Joint Obligation Act "applies to vicariously liable co-defendants").

[105] Utah Code Ann.. § 15-4-4.

Settlement Agreement did not expressly reserve any claims against ACW as required by § 15-4-4, ACW "is discharged to the extent provided in § 15-4-5."

Woori contends that even if it had released its claims against Anderson and had not made a reservation of rights against ACW, § 15-4-5 limits Woori's release of ACW. Section 15-4-5 provides that:

> (1) If an obligee releasing or discharging an obligor without express reservation of rights against a co-obligor then knows or has reason to know that the obligor released or discharged *did not pay as much of the claim* as he was bound by his contract or relation with that co-obligor to pay, the obligee's claim against that co-obligor shall be satisfied to the amount which the obligee knew or had reason to know that the released or discharged obligor was bound to such co-obligor to pay.
>
> (2) If an obligee so releasing or discharging an obligor has not then such knowledge or reason to know [that the obligor released or discharged did not pay as much of the claim as he was bound by his contract or relation with that co-obligor to pay], the obligee's claim against the co-obligor shall be satisfied to the extent of the lesser of two amounts, namely:
>
>> (a) the amount of the fractional share of the obligor released or discharged; or
>>
>> (b) the amount that such obligor was bound by his contract or relation with the co-obligor to pay.[107]

Woori argues that pursuant to § 15-4-5, "ACW would only be released of its obligations to WooriChemtech by the amount which WooriChemtech knew Anderson was bound to pay ACW for its obligations to WooriChemtech."[108] Woori contends that this issue cannot be resolved on a Rule 12(b)(6) motion to dismiss because "[w]hether Anderson was bound to pay ACW for its obligations to WooriChemtech arising from the claims in this case is a question of fact . . . ."[109] And "[f]urther, even if Anderson were bound to make any such a payment to ACW,

---

[106] *See Nelson on Behalf of Hirschfeld v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 935 P.2d 512, 514 (Utah 1997) (finding a vicariously liable employer as a co-obligor).

[107] Utah Code Ann. § 15-4-5(1)-(2) (emphasis added).

[108] Opposition at 14.

[109] *Id.*

a fact that has not been established, there is no evidence before the Court that would allow it to reasonably conclude that WooriChemtech was aware of or should have been aware of such an obligation."[110] Whether Anderson is bound to pay ACW for his obligations to Woori—and the extent of any such obligation —is a question of fact precluding determination of the extent of Woori's release, if any, of ACW, on this motion.[111] Any claim against ACW is nevertheless dismissed as being barred by the statute of limitations. Accordingly, Woori's claims against Anderson are dismissed because those claims have been released by the 2013 Settlement Agreement, while Woori's claims against ACW are released due to the bar of the statute of limitations.

## ORDER

It is hereby ORDERED that Third-Party Defendant's Motion[112] to Dismiss the Second Amended Third-Party Complaint is GRANTED and Third-Party Plaintiff's Second Amended Third-Party Complaint[113] is DISMISSED WITH PREJUDICE.

Dated March 21, 2016.

BY THE COURT:

David Nuffer
United States District Judge

---

[110] *Id.*

[111] *See Nelson on Behalf of Hirschfeld v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints, 935 P.2d 512, 513 (Utah 1997)* ("[B]ecause the master and the servant are equally liable, both are tort-feasors under the statute and the servant's release does not release the master.)

[112] Motion to Dismiss Second Amended Third-Party Complaint and Memorandum in Support, docket no. 94, filed November 12, 2014.

[113] Second Amended Third-Party Complaint, docket no. 84, filed October 15, 2014.